IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. 5:19-CV-128-KDB-DSC

PEKIN INSURANCE COMPANY,

     Plaintiff,

v.

INNOVATIVE COATINGS AND
MATERIALS, L.L.C.; ABT, INC.; and
C.R. ONSRUD, INC.

     Defendants.

**ORDER ON PLAINTIFF
PEKIN INSURANCE COMPANY AND
DEFENDANT ABT, INC.'S MOTIONS
FOR DEFAULT JUDGMENT**

**THIS MATTER** is before the Court on Plaintiff Pekin Insurance Company's ("Pekin")
Motion for Default Judgment (Doc. No. 40) and Renewed Motion for Default Judgment (Doc.
No. 57) and Defendant ABT, Inc.'s ("ABT") Motion for Default Judgment (Doc. No. 43). The
Court has carefully considered these motions, the parties' briefs and exhibits in support of their
respective positions, and the Stipulation (Doc. No. 56) filed by the parties. For the reasons
discussed below, the Court will **GRANT** both motions.

## I.   LEGAL STANDARD

Pekin and ABT move for default judgment under Rule 55(b) of the Federal Rules of
Civil Procedure, because their claims do not seek a sum certain. In order to be granted default
judgment, Pekin's Complaint (Doc. No. 1) and ABT's Amended Crossclaim (Doc. No. 19) must
include "[f]actual allegations . . . enough to raise a right to relief above the speculative level."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 167 L.Ed.2d 929, 940 (2007). The claims must
"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its
face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 173 L.E.2d 868, 884 (2009) (quotations omitted).

When considering a motion for default judgment, the Court accepts all well-plead factual allegations. *See Erickson v. Pardus* 551 U.S. 89, 94 (2007). "[T]he general rule is that 'facts alleged by the plaintiff are deemed admitted' while 'plaintiff's conclusions of law are not deemed established.'" *Synergy Fin. LLC v. Zarro*, 2005 U.S. Dist. LEXIS 55646 at * 17 (W.D.N.C., Oct. 18, 2005) (citing 10 Moore's Federal Practice § 55.12(1) (3d ed. 1999)).

Pekin's claims arise out of a policy of insurance issued to ICM, an Iowa corporation, and this court currently sits with diversity jurisdiction. "A federal court exercising diversity jurisdiction is obligated to apply the substantive law of the state in which it sits, including the state's choice of law rules." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581 (4th Cir. 2004) (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 79 (1938)).

North Carolina follows the general rule of *lex loci contractus*, *i.e.*, "the substantive law of the state where the last act to making a binding contract occurred, usually delivery of the policy, controls the interpretation of an insurance policy." *Cont'l Cas. Co. v. Physicians Weight Loss Ctrs. Of Am.*, 61 Fed. App. 841, 844 (4th Cir. 2003) (unreported). Here, Pekin issued its policy to ICM, an Iowa corporation; as such, Iowa law controls interpretation of the policy of insurance.

Under Iowa law, "fraudulent misrepresentations leading to the creation of a contract give rise to a right of rescission." *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 568 (Iowa 1987). To avoid a contract through the doctrine of equitable rescission, five elements must be proven: "(1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance." *Hyler v. Garner*, 548 N.W.2d 864 (Iowa 1996). Under Iowa law, "it is not the knowledge of falsity that is at issue, but 'whether misrepresentations induced the complaining party to contract.'" *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 269 (Iowa 2002) (citing *Utica Mut. Ins. Co. v. Stockdale Agency*, 892

F. Supp. 1179, 1193 (N.D. Iowa 1995).

## II. FACTS AND PROCEDURAL HISTORY

On or around January 30, 2019, Defendant Innovative Coatings & Materials, L.L.C. ("ICM") submitted a bid to ABT for spray painting services to four (4) commercial silos at the ABT plant in Troutman, North Carolina, to occur in May 2019. The spray painting services included sand and/or water blasting, cleaning and prepping the silos, two (2) coatings of paint to the silos, and supplies (hereinafter, this scope of work is referred to as, the "Bid"). The commercial silos are over three stories tall.

After ICM submitted the Bid to ABT, on or around March 15, 2019, ICM applied for a Commercial General Liability policy with Pekin by completing an insurance application and contractors supplemental application (collectively, the "Application"). In the Application, ICM answered "no" to the question of whether it's work included any work over three stories. In reliance on ICM's representations, PEKIN issued a Commercial General Liability policy to ICM bearing number CLO240465-0, with effective dates of March 29, 2019 to March 15, 2020 (the "Policy"). ICM paid the premiums required. The Policy includes the following relevant provisions:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

. . .

**6.    Representations**

By accepting this policy, you agree:

**a.**    The statements made in the Declarations are accurate and complete;

**b.**    Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

Based upon the Bid, ICM provided spray painting services to ABT's four (4) commercial silos in May 2019, which included work over three stories. During the work, approximately 117 vehicles owned by employees of C.R. Onsrud, Inc. ("Onsurd"), a neighboring business, were damaged with overspray painting as a result of ICM's work. As a result of the overspray damage, Onsrud engaged the services of The Auto Salon, LLC to clean the affected vehicles, and paid damages to mitigate the damage to its employees' vehicles.

Based upon the foregoing, Pekin filed its Complaint and seeks a declaratory judgment that it is entitled to rescission of Policy due to material misrepresentations made in ICM's application for the insurance and seeks a declaration that it may refuse to defend and indemnify ICM under the Policy and not be required to pay damages for any losses covered by the insurance, specifically including claims for damages by Onsrud and ABT. (Doc. No. 1) ABT served an Amended Crossclaim on ICM, seeking indemnity, contribution and recovery of costs, interest, and attorneys' fees. (Doc. No. 19)

ICM failed to answer either Pekin's Complaint or ABT's Amended Crossclaim, and both parties moved for, and were granted default as to ICM. Both Pekin and ABT now move for default judgment under Fed. R. Civ. P. 55(b), and Onsrud, the remaining appearing defendant, does not oppose either Motion. (Doc. No. 56) Therefore, these motions are ripe for the Court's determination.

## III.    DISCUSSION

## A.    PEKIN'S CLAIM FOR RESCISSION OF THE POLICY.

Pekin seeks to rescind the Policy, based upon the alleged material misrepresentations of ICM in its application of insurance. To rescind the Policy, Pekin must prove five elements under

Iowa law. *Hyler, surpa.* For the reasons set forth herein, the Court finds Pekin has proven these five elements and may rescind the Policy.

As an initial matter, because ICM failed to answer Pekin's Complaint, the facts alleged by Pekin are deemed admitted as to ICM, including *inter alia*, (1) ICM contracted with ABT to provide spray painting services to four commercial silos (Doc. No. 1, ¶ 11); (2) the four commercial silos are over three stories tall (*Id.*, ¶ 13); (3) ICM submitted the Bid to ABT on or around January 30, 2019 for spray painting of the commercial silos (*Id.*, ¶ 11); (4) on or around March 15, 2019, ICM applied for a policy of insurance with Pekin by completing the Application (*Id.*, ¶ 14); (5) in the Application, ICM answered "NO" to the question, "Does the applicants' work include . . . Work Over 3 Stories" (*Id.*, ¶ 17); and (6) Pekin bound the Policy in reliance on ICM's representations (*Id.*, ¶ 19).[1]

Based upon the factual allegations which are deemed admitted as to ICM based upon its default, prior to completing the Application, ICM had contracted with ABT to provide spray painting serves for commercial silos over three stories tall. Therefore, ICM knew, or should have known, at the time of making the Application it would perform work over three stories. Accordingly, ICM's representation that it did not perform work over three stories was false. Pekin has therefore proven elements one (representation) and two (falsity) as required under Iowa law.

Next, the Court must determine whether ICM's false representation was material, the third element required under Iowa law. A representation is material when it induces another to

---

[1] The Court notes that Pekin has moved to rescind the Policy on three separate bases: (1) that ICM misrepresented the nature and scope of the work it performed (Doc. No. 1 ¶ 40); (2) that ICM misrepresented that it performed work outside the state of Iowa (*Id.* ¶ 35); and (3) that ICM misrepresented that did not perform work over three (3) stories (*Id.* ¶ 45). Because the Court finds that ICM's representation regarding work performed over three (3) stories is evidenced from the admissions and materials before the Court, and this basis alone supports default judgment, the Court does not specifically consider the other bases in entering this Order. (*See e.g.* Doc. No. 40-2)

act and "the transaction would not have occurred without it." *Rubes*, 642 N.W.2d 270 (citing *Utica Mut. Ins. Co.*, 892 F. Supp. at 1194). Based upon the factual allegations which are deemed admitted as to ICM based upon its default, ICM admitted Pekin would not have issued the Policy, accepted the risk, or set the premium as it did if ICM had truthfully answered the Application. (*See id.* ¶¶ 46-49) Pekin, therefore, has proven the third element (materiality) required under Iowa law.

Turning to the fourth and fifth elements, the Court must determine whether ICM's material misrepresentation induced Pekin to act (or refrain from acting), because Pekin justifiably relied on the representations made in the Application to issue the Policy. Based upon the factual allegations which are deemed admitted as to ICM based upon its default, ICM's material misrepresentations induced Pekin to act, as Pekin issued the Policy in reliance upon ICM's representations. (*See id.* ¶¶ 20; 46-48) Furthermore, based upon the factual allegations which are deemed admitted as to ICM based upon its default, Pekin justifiably relied on the representations in the Application when determining whether to issue the Policy. (*Id.* ¶ 47) Pekin, therefore, has proven the fourth element (inducement) and fifth element (justifiable reliance) required under Iowa law. Accordingly, having satisfied all elements under Iowa law, the Court finds that Pekin is entitled to rescind the Policy and default judgment in Pekin's favor on this basis is proper.

Having determined that Pekin is entitled to rescind the Policy, the Court next considers whether Pekin may refuse to defend and indemnify ICM and not be required to pay damages for any losses covered by the now-rescinded Policy, specifically including claims for damages by Onsrud and ABT. As the Policy has been rescinded, no valid contract of insurance exists between Pekin and ICM such that Pekin has a duty to defend ICM or a duty to indemnify ICM.

6

Therefore, to the extent further claims are presented under the Policy, Pekin is entitled to refuse to defend or indemnify ICM as to any claims that could have been made under the now-rescinded Policy.

**B.    ABT'S CLAIMS FOR INDEMNITY AND CONTRIBUTION.**

Next, the Court considers ABT's claims for indemnity and contribution from ICM. ABT's claims arise out of claims made against it by Onsrud for property damage as a result of the overspray damage, including claims for negligence and negligent hiring.  (Doc. No. 6) ABT served its Amended Crossclaim on ICM, asserting its claims, and ICM failed to answer. For the reasons set forth herein, the Court finds ABT is entitled to indemnity and contribution.

ABT contracted with ICM to perform the spray painting work described herein and alleges that ICM owed ABT a duty to avoid foreseeable harm in the performance of its work. (Doc. No. 43, p. 3)   ABT asserts ICM breached this duty by causing the overspray which damaged vehicles on the Onsrud property, and that ICM's tortious conduct reflects active negligence.

North Carolina recognizes a right to "implied-in-law" indemnity "when a passive party is made liable for an active party's tortious conduct flowing to and injuring a third party."  *Kaleel Builders, Inc. v. Ashby*, 161 N.C. 34, 47, 587 S.E.2d 470, 478 (2003).  "Indemnity implied-in-law arises from an underlying tort, where a passive tortfeasor pays the judgment owed by an active tortfeasor to the injured third party."  *Id.* at 38-39, 587 S.E.2d at 474.  Implied-in-law indemnity exists "where the actively negligent tortfeasor may be found to have made an implied promise to indemnify the passively negligent tortfeasor."  *Charlotte Motor Speedway v. Tindall Corp.*, 195 N.C. App. 296, 303, 672 S.E.2d 691, 695 (2009).

Here, ICM, as a contractor to ABT, owed ABT a duty of reasonable care to avoid

foreseeable harm during the performance of its work. *Taylor v. Lutz-Yelton Heating & Air Conditioning Corp.*, 43 N.C. App. 194, 198-199, 258 S.E.2d 399, 402-403 (1979). ICM breached this duty when it caused the overspray damage to Onsrud's employee's vehicles and other damage, which was a foreseeable consequence of its negligent performance of its work. As such, any negligence of ABT was passive to the active negligence of ICM, and ABT is entitled to indemnity.

ABT also seeks contribution from ICM pursuant to N.C. Gen. Stat. § 1B-1(a). Pursuant to this statute, a party is entitled to contribution where it and another are jointly and severally liable to another in tort. *Holland v. Edgerton*, 85 N.C. App. 567, 571, 355 S.E.2d 514, 517 (1987).

Here, as a result of ICM's negligence, Onsrud alleges it suffered damages to its employees' vehicles, for which it paid to mitigate damages, and otherwise. Therefore, were the Court to conclude that ABT and ICM were joint tortfeasors (which the Court does not decide herein), ABT would be entitled to contribution pursuant to N.C. Gen. Stat. § 1B-1(a). As such, the Court finds that default judgment in ABT's favor on its claims for indemnity and contribution is proper.

## IV.  ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Pekin's Motion for Default Judgment (Doc. No. 40) and Renewed Motion for Default Judgment (Doc. No. 57) are **GRANTED**;

2. **Default Judgment** is entered in favor of Pekin against Defendant Innovative Coatings & Materials, L.L.C.;

3. PEKIN is entitled to rescind the Commercial General Liability policy

bearing policy number CLO240465-0 and PEKIN has neither a duty to defend nor liability to furnish or pay defense fees or costs for ICM in connection with its May 2019 spray painting services as described above;

4.     ABT's Motion for Default Judgment (Doc. No. 43) is **GRANTED**; and

5.     **Default Judgment** is entered in favor of ABT against Defendant Innovative Coatings & Materials, L.L.C.

**SO ORDERED ADJUDGED AND DECREED.**

Kenneth D. Bell
United States District Judge

Signed: October 22, 2020

9